IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CT-03098-D

**Bruce Bunting**,

   Plaintiff,

v.

**Roy A. Cooper,** et al.,

   Defendants.

**Memorandum & Recommendation**

  Plaintiff Bruce Bunting, proceeding *pro se*, filed this action under 42 U.S.C. § 1983. D.E. 5.[1] The matter is before the court for an initial screening pursuant to 28 U.S.C. § 1915A. Also before the court is Bunting's motion for an emergency injunction (D.E. 4). As explained below, the undersigned recommends[2] that the court deny Bunting's Motion for an Emergency Injunction and dismiss the Complaint.

**I. Background**

  Bunting's brief Complaint alleges that prison medical providers have informed him that he has Stage-4 lung cancer in both lungs, that treatment will not help him, and that he only has several months to live. Compl. ¶ V, D.E. 5. He requests that the court require the defendants to place him at the top of the lung organ donor list, locate two matching lungs, and perform two-lung transplant surgery immediately. *Id.* at VII; *see also* Mot. for Emergency Inj., D.E. 4.

---

[1] Bunting filed an initial Complaint (D.E. 1) and subsequently filed a Corrected Complaint (D.E. 5) in response to a deficiency order by the court (D.E. 3).

[2] The district court referred this matter to the undersigned United States Magistrate Judge for the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1).

The filings in this case provide additional details about Bunting's medical history and prognosis. Bunting is a 66 year old inmate who was diagnosed with lung cancer in 2016. Mot. for Emergency Inj. at 2, D.E. 4; Resp. to Mot. For Emergency Inj. at 1, D.E. 12. He received treatment over the course of several months through the University of North Carolina ("UNC"). Smith Aff. ¶ 5, D.E. 13. Despite the treatment, Bunting's cancer is advanced and his prognosis is not good. *Id.* ¶ 6.

The North Carolina Department of Public Safety ("DPS") approved all of the appointments and treatment recommended by UNC until March 2017 when Bunting refused to continue treatment. *Id.* ¶ 5. At that time, Bunting decided to forego palliative chemotherapy treatment and has refused a follow-up appointment with an oncologist. *Id.* ¶ 6.

The Department of Public Safety continues to provide medications to Bunting and assist him with pain management. *Id.* ¶ 9. Bunting has the ability to request that he be seen by the prison medical staff and has done so as recently as May 17, 2017. *Id.* At that appointment, Bunting did not request any change in treatment or seek an appointment with an oncologist. *Id.*

## II. Frivolity Review

### A. Overview of Frivolity Review Under 28 U.S.C. § 1915A.

The PLRA requires courts to review actions filed by prisoners against governmental entities or officials. 28 U.S.C. §1915A(a). The purpose of this review is to eliminate those claims that unnecessarily impede judicial efficiency and the administration of justice. The court must examine the pleadings, identify cognizable claims, and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* at 1915A(b).

The court may dismiss a complaint as frivolous due to either legal or factual shortcomings. *Neitzke* v. *Williams*, 490 U.S. 319, 325 (1989). A cause of action is legally frivolous if it is "based upon an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." *Adams* v. *Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). A complaint is factually frivolous when its factual allegations are "fanciful, fantastic, and delusional." *Denton* v. *Hernandez*, 504 U.S. 25, 32–33 (1992).

In order to avoid dismissal for failing to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Bunting's status as a *pro se* party relaxes, but does not eliminate, the requirement that his Complaint contain facially plausible claims. The court must liberally construe a *pro se* plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson* v. *BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Additionally, the court may dismiss a complaint if it seeks monetary relief from a defendant who is immunized from liability for monetary damages. This immunity can take any number of forms, including, but not limited to, immunity under the Eleventh Amendment, *see Bd. of Tr. of Univ. of Ala.* v. *Garrett*, 531 U.S. 356, 363 (2001), or common-law doctrines such as judicial, legislative, and prosecutorial immunity, *see Pierson* v. *Ray*, 386 U.S. 547 (1967).

With this framework in mind, the court turns to its analysis of Bunting's pleadings.

### B. Overview of Claims Under 42 U.S.C. § 1983

Bunting's claim arises out of 42 US.C. § 1983, which creates civil liability for any person acting under the color of state law who deprives a plaintiff of rights, privileges or immunities secured by the Constitution of laws of the United States. 42 U.S.C. § 1983. Therefore, in order to state a claim under § 1983, "a plaintiff must allege the violation secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West* v. *Atkins*, 487 U.S. 42, 48 (1988); *Philips* v. *Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Bunting names Governor Roy Cooper, University of North Carolina Medical Center, and Dr. James Engleman as defendants. Compl. ¶ IV.

### C. Nature of Bunting's Claims

Bunting cites the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution in support of his claim. *See* Compl. ¶ V. However, it is well-established that a claim that defendants were deliberately indifferent to his serious medical needs is appropriately addressed under the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle* v. *Gamble*, 429 U.S. 97, 104 (1976). "If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States* v. *Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham* v. *Connor*, 490 U.S. 386, 394 (1989)).

As for Bunting's reliance on the Equal Protection Clause, he has failed to allege that he was treated differently from any person with whom he is similarly situated, or any evidence to support his claim of discrimination based on his status as a prisoner or on his race. *See Morrison* v. *Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (in order to succeed on an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he

4

is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").

Thus, the court will analyze Bunting's § 1983 claim under principles applicable to Eighth Amendment claims of inadequate medical care.

### D. Review of Eighth Amendment Claim Against Each Defendant

#### i. Governor Cooper should be dismissed because there are no allegations that he was personally involved in the alleged violations or that the alleged violations were the result of a policy or custom of the state of North Carolina.

Bunting's claim against Governor Cooper in his official capacity is, in reality, a claim against the State of North Carolina. *See Kentucky* v. *Graham*, 473 U.S. 159, 165–66 (1985). As such, his Complaint must contain sufficient allegations to show that the alleged constitutional injury is attributable to an official policy or custom of the State of North Carolina. *See Monell* v. *Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Bunting can make this showing in one of four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle* v. *Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter* v. *Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Bunting does not allege any of the foregoing criteria. Therefore, his claim against Governor Cooper in his official capacity should be dismissed for a failure to state a claim upon which relief may be granted.

Bunting also seeks to hold Governor Cooper liable in his individual capacity for the alleged violation of his constitutional rights. However, the Complaint does not allege that Governor

5

Cooper was personally involved in Bunting's health care or aware of Bunting's need for medical treatment. Because "[t]he doctrine of respondeat superior has no application under [section 1983]," *see Vinnege* v. *Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977), Governor Cooper cannot be held liable under § 1983 simply because of the position he occupies as Governor of North Carolina. Instead, a successful individual capacity claim must allege that the defendant was personally involved in the deprivation of Bunting's rights. *Id.*; *see also Iqbal*, 556 U.S. at 676; *Monell,* 436 U.S. at 691–92. The Complaint fails to do so. Thus, Bunting's claim against Governor Cooper should be dismissed as frivolous.

### ii. The UNC Medical Center should be dismissed because it is not amenable to suit under Section 1983.

Bunting also named the University of North Carolina Medical Center as a defendant. In order to state a claim for alleged constitutional violations under 42 U.S.C. § 1983, Bunting must show that the defendant sued for such violations was a "person" who could, and did, act under color of state law. *See* 42 U.S.C. § 1983. The University of North Carolina does not qualify as a person under § 1983, *Huang* v. *Bd. of Governors of the Univ. of N. Carolina*, 902 F.2d 1134, 1139 n.6 (4th Cir. 1990), and it should be dismissed as a defendant.

### iii. Claim against Dr. Engleman

The court now turns to Bunting's individual capacity claim against Dr. James Engleman, a physician at the Craven Correctional Institute.

Under the Eighth Amendment, sentenced prisoners are entitled to adequate medical care. *Farmer* v. *Brennan*, 511 U.S. 825, 832 (1994). In the medical context, an inmate an inmate must make both an objective showing that the inmate has a "serious medical need" and a subjective showing that the defendant acted with "deliberate indifference" to the inmate's serious medical need. *See Iko* v. *Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008); *Estelle,* 429 U.S. at 104. The objective

component is satisfied by a serious medical condition. *Johnson* v. *Quinones,* 145 F.3d 164, 167 (4th Cir. 1998). Here, Bunting has shown that he has a serious medical condition, that he has cancer in both of his lungs and has a short time to live. Thus, he has satisfied the objective showing required by the Eighth Amendment. In order to prevail on his Eighth Amendment claim, however, Bunting must also show that Dr. Engleman acted with "deliberate indifference" to his serious medical need.

"Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the [prisoner] or that they actually knew of and ignored [the prisoner's] serious need for medical care." *Young* v. *City of Mt. Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001) (citations omitted). Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. *Estelle*, 429 U.S. at 106; *Grayson* v. *Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Johnson,* 145 F.3d at 167. "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." *Stokes* v. *Hurdle*, 393 F. Supp. 757, 762 (D. Md. 1975), *aff'd,* 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. *Id.* at 763. The Eighth Amendment is not violated by a doctor's failure to provide the type or scope of care that the prisoner personally desires. *Id.*

Bunting's cancer was diagnosed in February 2016. *See* Mot. for Emergency Inj. at 2, D.E. 4. Bunting acknowledges that Dr. Engleman has provided him medical treatment for his terminal

7

illness. *Id.* However, Dr. Engleman has told him that further treatment will not benefit him. *Id.*; *see also* Compl. ¶ V. Thus, Bunting has not alleged that Dr. Engleman ignored or disregarded his medical needs, or failed to treat him for his cancer. Bunting also has not alleged that any medical professional has recommended a double lung transplant, or that a double lung transplant is medically indicated for Bunting. At most, Bunting has shown that he disagrees with Dr. Engleman's diagnosis and opinion as to the course of medical treatment for his cancer. A disagreement between an inmate and a physician over a particular course of treatment will not support a claim for deliberate indifference. *United States* v. *Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) ("[W]e have specifically held that a mere difference of opinion regarding the adequate course of treatment does not give rise to an Eighth Amendment violation.").

The court is sympathetic to Bunting's condition. However, Bunting has failed to show a violation of his Eighth Amendment rights. Thus, the undersigned recommends that the court dismiss Bunting's Complaint.

## IV. Motion for an Emergency Injunction

In his motion for emergency injunction, Bunting asks this court to require the defendants to admit him to UNC Medical Center, to place his name at the top of the lung organ donor list, to immediately locate two matching lungs, and to perform a lung transplant. *See* Mot. for Emergency Inj. at 1, D.E. 4. A necessary requirement for a preliminary injunction is that the moving party demonstrate that he is likely to succeed on the merits. *See Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (a court may grant a temporary restraining order or a preliminary injunction if the moving party demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). Where, as here, a plaintiff seeks a

8

mandatory injunction, he must demonstrate "that the exigencies of the situation demand such relief." *Wetzel* v. *Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

As noted above, the allegations of the Complaint fail to state a claim for a violation of Bunting's constitutional rights. Governor Cooper's response to Bunting's request for injunctive relief reinforces that conclusion. The record establishes that Bunting continuously received cancer treatments until he requested that the treatments stop. DPS continues to assist Bunting with pain management and appears open to discussing whether it would be appropriate for Bunting to receive additional treatment for his lung cancer. The Defendants are doing all that the Constitution requires of them, and, as a result, Bunting cannot show that he is likely to succeed on the merits of his claim. Thus, Bunting's Motion for an Emergency Injunction should be denied.

## V. Conclusion

For the reasons stated above the undersigned recommends that the court DENY Bunting's motion for an emergency injunction (D.E. 4) and DISMISS Bunting's Complaint (D.E. 5).

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on plaintiff. Plaintiff shall have until 14 days after service of the Memorandum and Recommendation on plaintiff to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If plaintiff does not file written objections to the Memorandum and Recommendation by the foregoing deadline, plaintiff will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, plaintiff's failure to file written objections by the foregoing deadline will bar plaintiff from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright* v. *Collins***, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: May 23, 2017

    *Robert T Numbers II*
    _____
    Robert T. Numbers, II
    United States Magistrate Judge